UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rodrigo Ribadeneira and<br>Superdeporte Plus Peru S.A.C., <br><br>Petitioners, <br><br>v. <br><br>New Balance Athletics, Inc., <br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>) Civ. No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITION TO VACATE ARBITRATION AWARD**

Pursuant to Sections 10 and 12 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 10, 12 Petitioners Rodrigo Ribadeneira and Superdeporte Plus Peru S.A.C. ("Superdeporte") (collectively "Petitioners") file this Petition to vacate the Partial Final Arbitration Award (the "Award"), dated August 20, 2020, as clarified by the Order on Respondents' Request for Correction and Interpretation of the Partial Final Award, dated November 4, 2020 ("Order"), that was made in this District by a single Arbitrator appointed by the International Centre for Dispute Resolution ("ICDR") in the matter of *New Balance Athletics, Inc. v. PSG et al.* (ICDR Case No. 01-18-0003-1183), as to Petitioners Ribadeneira and Superdeporte.

Petitioners never signed an arbitration agreement with New Balance Athletics, Inc. ("New Balance"), and therefore did not agree with New Balance to arbitrate any claims. The Award should be vacated under the Federal Arbitration Act because "the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and indefinite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Arbitrator here exceeded his authority

1

by determining in the first instance the gateway arbitrability question of whether Ribadeneira and Superdeporte were bound by the arbitration agreement. The Arbitrator also exceeded his authority by resolving that question in the affirmative, in conflict with well-established law providing six exceptions to the rule that nonsignatories to an arbitration agreement may not be bound thereto. None of those exceptions applies here based on the law and the undisputed facts.[1]

## PARTIES

1. Petitioner Rodrigo Ribadeneira is an Ecuadorian entrepreneur who wholly or partially owns corporate entities, including an indirect ownership of Superdeporte through other holding companies, that have made investments in Peru, as well as in other countries in Latin America. Mr. Ribadeneira's address is at Hidalgo de Pinto, Quito, Ecuador.

2. Petitioner Superdeporte is a limited liability company registered under the laws of Peru, with its registered office located at Av. Larco Nro. 1301 Int. 301, Miraflores, Peru. Superdeporte is in the business of distributing athletic footwear, apparel, and accessories.

3. Respondent New Balance is a company registered under the laws of Massachusetts, with its registered office located at Boston Landing, 100 Guest Street, Boston, Massachusetts 02135. New Balance is in the business of designing, manufacturing, marketing, and distributing athletic footwear, apparel, and accessories.

## JURISDICTION AND VENUE

---

[1] While Petitioners are not challenging certain of the other factual and legal findings or conclusions reached by the Arbitrator, they by no means accept them as correct interpretations of the underlying facts or law, and they do not challenge them here given the very limited circumstances under which a party may challenge an arbitral award pursuant to the requirements of the Federal Arbitration Act.

4. Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over this matter because there is diversity of citizenship, and the amount "in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]"

5. Venue is proper under 9 U.S.C. § 10 because the Award, the Order, and the related findings and rulings, that are the subject of this Petition were all made in this District by an ICDR-designated Arbitrator sitting in Boston, Massachusetts.

**FACTS**

6. Mr. Ribadeneira initiated a relationship with New Balance in 1992, whereby one of the entities he owned began distributing sportswear for New Balance in Ecuador. In 2000, after the relationship between the parties had developed well in Ecuador, the parties extended their relationship to cover Peru. The relationship progressed well in Peru for the following 10 years.

7. At the end of 2009, Peruvian Sporting Goods S.A.C. ("PSG") was created, with Ribadeneira as PSG's ultimate majority shareholder through various intervening corporate entities.

8. At the beginning of 2010, PSG and New Balance entered into a distribution agreement for the distribution of New Balance's products in Peru.

9. On January 1, 2013, New Balance and PSG entered into a further Distribution Agreement (the "Distribution Agreement"), which is at issue in this proceeding. The Distribution Agreement governed the sale and distribution of New Balance's products in Peru. Article 21 of the Distribution Agreement states, in relevant part: "The parties agree that any and all disputes (whether in contract or any other theories of recovery) related to or arising out of this Agreement or the relationship, its application and/or termination (including post-termination obligations) shall be settled by final and binding arbitration in accordance with the UNCITRAL Arbitration Rules"

(the "Arbitration Clause").  A true and accurate copy of the Distribution Agreement is attached hereto as <u>Exhibit 1</u>.

10. Neither Ribadeneira nor Superdeporte are signatories to the Distribution Agreement between New Balance and PSG, or the Arbitration Clause contained therein.

11. The Distribution Agreement was valid under its original terms until December 31, 2015.  However, if neither party expressed an intention to let the Distribution Agreement expire, then (by its terms) the Distribution Agreement would automatically renew for an additional year, *i.e.*, until December 31, 2016.  By the end of the Distribution Agreement's original term, neither party expressed an intention to let the Distribution Agreement expire, and thus it automatically renewed until December 31, 2016.

12. Starting in late 2014 and culminating in 2015, New Balance made an offer to PSG to enter into a new and reformed distribution agreement for its business in Peru.  Per New Balance's requirements for the new distribution agreement, PSG would enter into the agreement through a different corporate entity, which had distinct capabilities from PSG, which ultimately, after the formation of Superdeporte in early 2016, became Superdeporte.

13. In mid-2015, PSG and New Balance began negotiating the new agreement.  PSG believed that, by late 2015 and with minor amendments in January 2016, an agreement had been reached between PSG and New Balance, with Superdeporte ultimately to replace PSG in the new agreement.  However, on May 30, 2016, New Balance informed PSG and Superdeporte that it believed no distribution agreement existed between New Balance and Superdeporte and that it was "reverting back" to the original 2013 distribution agreement that New Balance had in place with PSG.

14. Shortly thereafter, on June 23, 2016, New Balance notified PSG and Superdeporte in writing that it was formally terminating the Distribution Agreement with PSG effective December 31, 2016. On July 8, 2016, New Balance informed PSG and Superdeporte that New Balance had decided to work with another distributor in Peru beginning in 2017.

15. On November 25, 2016, PSG and Superdeporte executed two similar assignments of rights contracts with Ribadeneira, assigning to him all of their rights to the claims initiated against New Balance with respect to the new, unsigned agreement that New Balance claimed to be ineffective.

16. Subsequently, in January 2017, Ribadeneira initiated civil legal proceedings against New Balance before Peruvian civil courts. Ribadeneira claimed that New Balance failed to honor its obligations under the new agreement and alleged extracontractual claims arising from New Balance's failure to conduct itself in good faith under Peruvian law with respect to the negotiation and execution of the new agreement (the "Peru Claims").

17. On February 1, 2017, Ribadeneira filed a request with the Peruvian civil courts for interim relief. Ribadeneira asked the court to order New Balance to abstain from the distribution of its products in Peru with any distributor other than PSG, claiming that the new agreement was in effect and that, as such, New Balance should not be distributing products through the new distributor.

18. In December 2017, the Peruvian civil court ordered a halt on the distribution of New Balance products in Peru during the pendency of the proceeding.

19. On July 31, 2018, the Peruvian court lifted its interim order, formally permitting the distribution of New Balance products in Peru.

20. On May 2, 2019, PSG, Superdeporte, and Ribadeneira executed two similar assignment of rights contracts in which Ribadeneira transferred all the right to proceed with the claims he possessed against New Balance back to PSG and Superdeporte.

21. New Balance initiated an arbitration proceeding against PSG and Ribadeneira on July 31, 2018. New Balance argued that PSG and Ribadeneira had breached the Distribution Agreement for failure to pay money due thereunder. A true and accurate copy of the Notice of Arbitration is attached hereto as Exhibit 2.

22. PSG and Ribadeneira responded on September 4, 2018, arguing (*inter alia*) that the Arbitrator did not have jurisdiction over Ribadeneira because he was not a party to the Distribution Agreement. A true and accurate copy of the Response is attached hereto as Exhibit 3.

23. PSG and Ribadeneira amended their response on October 29, 2018, and, while reiterating their jurisdictional objection as to Ribadeneira, asserted a counterclaim against New Balance for breaching the Distribution Agreement. A true and accurate copy of the Amended Response to the Notice of Arbitration and Counterclaim is attached hereto as Exhibit 4.

24. On January 25, 2019, New Balance moved to compel PSG and Ribadeneira to arbitrate the claims then pending against New Balance in Peru. A true and accurate copy of the Motion to Compel Arbitration is attached hereto as Exhibit 5.

25. In their response of February 4, 2019, PSG and Ribadeneira reiterated their objection that the Arbitrator did not have jurisdiction over Ribadeneira, as he was never a party to the Distribution Agreement. A true and accurate copy of the Response to Claimant's Jurisdictional Objections is attached hereto as Exhibit 6.

26. On March 18, 2019, the Arbitrator granted New Balance's motion to compel arbitration, holding, in relevant part, that "[it] is the claims that are subject to arbitration." A true

and accurate copy of the Memorandum and Order on Claimant's Motion to Compel Arbitration is attached hereto as Exhibit 7.

27. On May 3, 2019, New Balance amended its notice of arbitration to add Superdeporte as a respondent and to add a claim against PSG, Superdeporte, and Ribadeneira for tortious interference with New Balance's new distribution arrangement with its new distributor in Peru as a result of the Peru Claims. A true and accurate copy of the Motion to Amend is attached hereto as Exhibit 8.

28. PSG, Ribadeneira, and Superdeporte moved for summary disposition on May 31, 2019, asserting, in relevant part, that the Arbitrator did not have jurisdiction over Ribadeneira, explaining the general rule under Massachusetts law that a nonsignatory could not be bound to an arbitration agreement, and that none of the six exceptions applied. A true and accurate copy of the Motion for Summary Disposition is attached hereto as Exhibit 9.

29. On August 20, 2019, the Arbitrator denied the motion for summary disposition. The Arbitrator noted his prior holding that he had jurisdiction over the Peru Claims filed by Ribadeneira, and further held that because New Balance's tortious interference claim arose from the Peru Claims, he had jurisdiction over Ribadeneira with regard to the tortious interference claim as well. The Arbitrator deferred ruling until the close of discovery on the question whether he had jurisdiction over Ribadeneira with respect to New Balance's original claim for breach of the Distribution Agreement based upon a theory of piercing the corporate veil. A true and accurate copy of the Memorandum and Order on Respondents' Motion for Summary Disposition is attached hereto as Exhibit 10.

30. Following discovery, PSG, Superdeporte, and Ribadeneira renewed their motion for summary disposition on February 12, 2020, and again asserted that the Arbitrator did not have

jurisdiction over Ribadeneira or Superdeporte with respect to any of New Balance's claims. A true and accurate copy of the Renewed Motion for Summary Disposition is attached hereto as Exhibit 11.

31. The parties held a hearing in the case on March 9-11 and May 30, 2020 and PSG, Superdeporte and Ribadeneira again argued that the Arbitrator had no jurisdiction over Ribadeneira and Superdeporte under New Balance's claim for breach of the Distribution Agreement. A true and accurate copy of excerpted portions of the Hearing Transcript is attached hereto as Exhibit 12.

32. PSG, Superdeporte and Ribadeneira reiterated this argument in their June 30, 2020 post-hearing brief. A true and accurate copy of the Post-Hearing Brief is attached hereto as Exhibit 13.

33. On August 20, 2020, the Arbitrator issued the Award. A true and accurate copy of the Memorandum of Decision and Partial Final Award is attached hereto as Exhibit 14.

34. As relevant here, the Arbitrator determined that PSG was liable for breaching the Distribution Agreement and that Superdeporte was also liable for the breach as PSG's "business successor." As to the tortious interference claim, the Arbitrator stated:

> . . . I find that the respondents employed improper means in order to obtain their desired result, an outcome that restrained sales by New Balance for approximately seven months, and caused the claimant lost earnings for at least four of those months. This finding applies to the three respondents. While the material misrepresentations were submitted to the [Peruvian] court on behalf of Ribadeneira, I find that the assignments from PSG and Superdeporte created principal-agent relationships rendering the principals as well as the agent responsible for the losses caused.

Ex. 14 at 22.

35. On September 17, 2020, PSG, Superdeporte, and Ribadeneira requested correction of the Award, interpretation of the Award, and/or the issuance of an additional award. A true and

accurate copy of the Request for Correction and Interpretation of the Partial Final Award and/or for the Issuance of an Additional Award is attached hereto as Exhibit 15.

36. As relevant here, they again objected to the Arbitrator's exercise of jurisdiction over Ribadeneira and Superdeporte, noting: "Since the start of this Arbitration, Respondents Ribadeneira and Superdeporte consistently have maintained that this Tribunal does not have jurisdiction to arbitrate any claims with respect to these Respondents, because neither has ever consented to arbitrate any claims with New Balance, and because there is no legal doctrine or set of facts that can require them to arbitrate claims against New Balance over their objection." Ex. 15 at 7.

37. They also explained that arbitral jurisdiction over a claim does not, standing alone, confer arbitral jurisdiction over a person who has the right to advance that claim. Respondents pointed out that in the Award, "the Tribunal did not explain the reasons as to why it was asserting jurisdiction over Respondents Ribadeneira and Superdeporte, nor what evidence, if any, it relied upon to deny Respondents' jurisdiction objections and to assert jurisdiction over them" and that "[i]t also did not explain what legal doctrine or doctrines it is relying upon to deny Respondents' jurisdictional objections and to assert jurisdiction over Respondents Mr. Ribadeneira and Superdeporte or its legal reasoning for doing so." *Id*. at 9.

38. The Arbitrator denied that request in the Order issued on November 4, 2020. He stated that he had "exercised jurisdiction with respect to Superdeporte by imposing joint liability on that company (together with PSG) for amounts owed under the 2013 distribution agreement based on [his] finding that it is the business successor to PSG." He further stated that he had "exercised jurisdiction over Ribadeneira and Superdeporte, and ha[d] concluded that each is liable (together with PSG) with respect to New Balance's tortious interference claim, because the Peru

9

claims, so-called, from which that interference arose were pursued by Ribadeneira pursuant to assignments of those claims by PSG and Superdeporte." A true and accurate copy of the Memorandum and Order on Respondents' Request for Correction and Interpretation of the Partial Final Award and/or for the Issuance of an Additional Award is attached hereto as <u>Exhibit 16</u>.

## COUNT I

39. Petitioners incorporate all previous paragraphs as if fully set forth here.

40. Pursuant to Section 10(4) of the FAA, 9 U.S.C. § 10(a)(4), "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration – (4)where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

41. The Arbitrator here exceeded his authority by determining in the first instance the gateway arbitrability question of whether Ribadeneira and Superdeporte were bound by the Arbitration Clause.

42. Accordingly, the arbitration award as to Petitioners Ribadeneira and Superdeporte should be vacated.

## COUNT II

43. Petitioners incorporate all previous paragraphs as if fully set forth here.

44. The Arbitrator exceeded his authority by resolving the arbitrability question of whether Ribadeneira and Superdeporte were bound by the Arbitration Clause in the affirmative, in conflict with well-established law providing six exceptions to the rule that nonsignatories to an arbitration agreement may not be bound thereto.

45. Accordingly, the arbitration award as to Petitioners Ribadeneira and Superdeporte should be vacated.

## PRAYER FOR RELIEF

Wherefore, Petitioners pray that this Honorable Court enter an Order that:

A. Vacates the arbitration award as to Petitioner Ribadeneira;

B. Vacates the arbitration award as to Petitioner Superdeporte; and

C. Provides further relief as this Honorable Court deems just and equitable.

Date: February 1, 2021

Respectfully submitted,

Rodrigo Ribadeneira and
Superdeporte Plus Peru S.A.C.

By their attorneys,

*/s/ Gregg Badichek*
Gregg Badichek (BBO #706270)
greggbadichek@quinnemanuel.com
111 Huntington Ave, Suite 520
Boston, MA 02199
Tel: 617-712-7100
Fax: 617-712-7200

David M. Orta, *pro hac vice application forthcoming*
davidorta@quinnemanuel.com
Julianne Jaquith, *pro hac vice application forthcoming*
juliannejaquith@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Tel: +1 202 538 8000
Fax: +1 202 538 8100

David Cooper, *pro hac vice application forthcoming*
davidcooper@quinnemanuel.com
51 Madison Ave, 22nd floor
New York, NY 10010
Tel: +1 212 849 7000
Fax: +1 212 849 7100

*Attorneys for Petitioners*

**CERTIFICATE OF SERVICE**

  I hereby certify that on February 1, 2021, I caused a true and correct copy of the foregoing Petition and related Exhibits to be served on the following counsel by email:

Mark E. Tully
Kate MacLeman
Dylan Schweers
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
MTully@goodwinlaw.com
KMacLeman@goodwinlaw.com
DSchweers@goodwinlaw.com

              */s/ Julianne Jaquith*
              Julianne Jaquith